UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22cv22262

MICHAEL MOORS,

      Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINE,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

      Plaintiff, MICHAEL MOORS (hereinafter "MOORS"), through undersigned counsel, sues

Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE

LINE, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

      1.    MOORS seeks damages in excess of $75,000.00, exclusive of interest, costs, and

attorneys' fees.

      2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

      3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

      4.    Suit is filed in federal court because of the federal forum selection clause in the

passenger contract ticket issued by CARNIVAL.

      5.    MOORS is *sui juris* and is a resident and citizen of the state of New York.

6.      CARNIVAL is a citizen of the state of Florida and the nation of Panama.

7.      CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.      CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.      Operated, conducted, engaged in, or carried on a business venture; and/or

      b.      Had an office or agency; and/or

      c.      Engaged in substantial activity; and/or

      d.      Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the push up bar that MOORS tripped on, the walls near the subject push up bar, the surrounding area, and all material and effects pertaining thereto, including the design, visual condition, and/or any other material pertaining to the area.

11.     At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Magic*.

12.     MOORS' incident occurred on or about July 1, 2022, while he was a fare paying passenger on CARNIVAL'S vessel, the *Magic*.

13.   At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in MOORS' incident.

14.   On or about July 1, 2022, MOORS was standing in the viewing area on Deck 12 in a normal and proper manner watching the ship dock. The ship was very crowded with passengers in the area he was standing. When he turned to walk away, he tripped over a push up bar permanently affixed to the deck and fell. MOORS was unable to see the push up bar due to the unreasonable crowding of passengers in the area, the push up bar's location, and the lack of warnings in the area.

15.   As a result, MOORS suffered severe injuries, including, but not limited to, injuries to both arms, which requires surgery(ies).

16.   When MOORS was taken to the ship's medical center, the ship's doctor failed to adequately treat his injuries and failed to properly control his pain, and instead told him to travel back to his home state for treatment, but failed to prescribe adequate pain medicine for MOORS' trip home.

17.   At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

    a.   The subject push up bar's unreasonable protrusion, which made the push up bar unreasonably easy for passengers such as MOORS to trip over.

    b.   The unreasonable placement of the push up bar in a location where its presence was obscured by the surroundings, including, but not limited to, the nearby walls.

    c.   The unreasonable placement of the push up bar in a location where passengers could reasonably be expected to walk and therefore be likely to trip over it.

    d.   The push up bar, walls, and surrounding area lacked adequate visual cues (such

as conspicuous tape/signs/stickers/proper coloring/other visual cues) to help
passengers see the push up bar.

    e.  The area lacked adequate safety features to prevent or minimize passenger
injury in the event of a fall, such as padding on the floor.

    f.  The unreasonable passenger crowding in the subject area, caused by
CARNIVAL'S unreasonable lack of reasonable crowd control.

    g.  Other dangerous conditions that will be revealed through discovery.

18.   Each of these dangerous conditions alone was sufficient to cause MOORS' incident and injuries, and MOORS is alleging that CARNIVAL was negligent as to each of these conditions separately and not cumulatively.

19.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

    a.  After his incident, a passenger came to MOORS while he was laying on the ground
and told him that a woman had previously tripped and fallen on the same push up bar
the previous day.

    b.  Furthermore, MOORS observed CARNIVAL'S crewmembers in the subject area at
the time of the incident, and these crewmembers were in the immediate vicinity, such
that MOORS reasonably infers that these crew members regularly used, observed, and
tended to the subject area, and therefore were or should have been aware of the
dangerous and/or risk-creating conditions thereof, and warned of and/or removed
these conditions, and/or more reasonably controlled the crowd. *See Aponte v. Royal
Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) ("In some cases
the proprietor may be held to have constructive knowledge if . . . an employee of the

proprietor was in the immediate area of the dangerous condition and could have easily seen . . . the hazard.") (citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (1980).

c.  Both prior to MOORS' incident and after, Defendant installed and/or refitted similar push up bars on the *Magic* and other ships in Defendant's fleet in areas where they were more easily visible, where passengers could reasonably be expected to walk, and with visual cues that made them more visible. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.").

d.  CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject push up bar, such that CARNIVAL should have known of the design defects of the subject push up bar and area before providing them for public use. These design defects include, but are not limited to, the structural dangers outlined in paragraph 17(a-e, f) of this Complaint. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 517–18 (11th Cir. 2020) (pleading that, "[c]hoosing and/or approving" a material and "failing to inspect" it to discover it was unreasonably dangerous to make it safer sufficiently alleged negligent design or maintenance to meet notice pleading requirements under the Federal Rules of Civil Procedure) (*citing Palm Beach Golf Center-Boca, Inc., v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

e.  There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 17 of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done. *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1356 (S.D. Fla. 2015) ("As previously noted, 'the law in the Eleventh Circuit . . . is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence.' *Cook*, 2012 WL 1792628, at *3 (*citing Muncie Aviation Corp.*, 519 F.2d 1178; Frazier, 568 F.2d 378); *see also Giorgio*, 2006 WL 1042003, at *2. Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition.'") (emphasis added) (*citing Cook*, 2012 WL 1792628, at *3; *Donlon*, 2011 WL 6020574, at *6)).

f.  CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in MOORS' incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to his incident. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 517 – 18 (11th Cir. 2020) ("Francis's complaint alleged that MSC breached its duty to her by, among other things, '[c]hoosing and/or approving . . . material that was

unreasonably slippery,' '[c]hoosing and/or approving . . . material that was unreasonably slippery . . . and 'failing to reasonably inspect . . . material, discover it was unreasonably slippery, and make it safer.' Doc. 1 at 8. Francis alleged theories of negligent design or maintenance sufficient to meet the notice pleading requirements of the Federal Rules of Civil Procedure.") (emphasis added, citation omitted) (*citing Palm Beach Golf Center-Boca, Inc. v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

g.  Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.  At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.  The subject area and the vicinity lacked adequate safety features to prevent or minimize MOORS' fall and/or impact.

22.  These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

23.  These hazardous conditions existed for a period of time before the incident.

24.  These conditions were neither open nor obvious to MOORS.

25.  At all times relevant, CARNIVAL failed to adequately inspect the subject area and the vicinity for dangers, and CARNIVAL failed to adequately warn MOORS of the dangers.

26.  At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

27.   At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in a reasonably safe condition.

28.   At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in MOORS' incident.

29.   At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in MOORS' incident.

30.   The crewmembers of the *Magic* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

31.   CARNIVAL had the right to hire and fire their employees and/or agents.

32.   CARNIVAL is directly responsible and liable for their actions and the actions of its employees and/or agents.

33.   The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.   The crewmembers were represented to MOORS and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. MOORS detrimentally relied on these representations as she would not have proceeded on the subject cruise had he believed the crewmembers were not employees of CARNIVAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

35.   MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34 as if set forth herein.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 8 of 31**

36.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to MOORS and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present at the time of MOORS' incident.

39.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.    These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42.    CARNIVAL'S negligence proximately caused MOORS great bodily harm in that, but for CARNIVAL'S negligence, MOORS' injuries would not have occurred.

43.     As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

44.     The losses are permanent and/or continuing in nature.

45.     MOORS suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO MAINTAIN**

46.     MOORS hereby adopts and re-alleges each and every allegation in paragraphs through 34, as if set forth herein.

47.     CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.     This duty includes, but is not limited to, the duty to provide its passengers reasonable

care by adequately maintaining the subject area and the vicinity.

49.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to MOORS and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present at the time of MOORS' incident.

50.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.   Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

52.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53.   CARNIVAL'S negligence proximately caused MOORS great bodily harm in that, but for CARNIVAL'S negligence, his injuries would not have occurred.

54.   As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

55.   The losses are permanent and/or continuing in nature.

56.   MOORS has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO REMEDY

57.   MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34 as if set forth herein.

58.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to MOORS and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk

creating and/or dangerous conditions discussed in paragraph 17 of the instant Complaint were present at the time of MOORS' incident.

61.     CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.     Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

63.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.     CARNIVAL'S negligence proximately caused MOORS great bodily harm in that, but for CARNIVAL'S negligence, his injuries would not have occurred.

65.     As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

66.     The losses are permanent and/or continuing in nature.

67.     MOORS has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE,

for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION**

68.    MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34 as if set forth herein.

69.    At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including MOORS.

70.    Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to MOORS.

71.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to MOORS and was negligent by failing to warn MOORS of the dangerous conditions discussed in paragraph 17 of the instant Complaint.

73.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions

for the reasons discussed in paragraph 19 of this Complaint.

74.    These dangerous conditions were also created by CARNIVAL.

75.    CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn MOORS despite knowing of the dangers.

76.    These dangerous conditions existed for a period of time before the incident.

77.    These conditions were neither open nor obvious to MOORS.

78.    CARNIVAL'S breach was the cause in-fact of MOORS' great bodily harm in that, but for CARNIVAL'S breach his injuries would not have occurred.

79.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.    CARNIVAL'S breach proximately caused MOORS great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.    As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

82.    The losses are permanent and/or continuing in nature.

83.    MOORS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT**
**AREA AND THE VICINITY**

84.    MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

85.    At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to MOORS, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 17(a-e, f) in the instant Complaint, as well as to design and install reasonable safeguards.

86.    At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which MOORS was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

87.    At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Magic*, including providing specifications to the shipbuilder in the original build

process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to MOORS, to design, install and/or approve of the subject area and the vicinity without any defects.

88.   At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in MOORS' incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.   CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.   CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Magic*, during the new build process.

91.   CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.   CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

93.   However, CARNIVAL permitted the dangerous conditions discussed in paragraph 17(a-e, f) of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.   The design flaws that made the subject area and the vicinity involved in MOORS' incident unreasonably dangerous were the direct and proximate cause of MOORS' injuries.

95.   CARNIVAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MOORS' incident, which it knew or should have known of.

96.   CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

97.   CARNIVAL'S breach was the cause in-fact of MOORS' great bodily harm in that, but for CARNIVAL'S breach his injuries would not have occurred.

98.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

99.   CARNIVAL'S breach proximately caused MOORS great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

100.  As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

101.  The losses are permanent and/or continuing in nature.

102.  MOORS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and

incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES,**
**AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

103. MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

104. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

105. The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, including specifically the crewmembers who were responsible for crowd control in the subject area, were agents of CARNIVAL for the following reasons:

a.      They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b.      These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.      CARNIVAL acknowledged that these staff, employees, and/or agents would act on

CARNIVAL'S behalf, and they accepted the undertaking.

106. CARNIVAL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 17 of the instant complaint.

107. CARNIVAL'S breach was the cause in-fact of MOORS' great bodily harm in that, but for CARNIVAL'S breach his injuries would not have occurred.

108. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

109. This negligence proximately caused MOORS great bodily harm in that, but for this negligence, MOORS' injuries would not have occurred.

110. As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

111. The losses are permanent and/or continuing in nature.

112. MOORS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement,

scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VII**
**VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE**
**SHIP'S MEDICAL STAFF**

113.   MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

114.   CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

115.   Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

116.   At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

117.   CARNIVAL is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

118.   CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

119. CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

120. CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

121. CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

122. CARNIVAL'S marketing materials described the infirmary in proprietary language.

123. The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

124. CARNIVAL provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

125. At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

    a. Failing to promptly provide MOORS with proper medical and/or first aid care and attention;

    b. Failing to timely and properly diagnose and/or assess MOORS' condition;

    c. Failing to timely and properly attend to MOORS, to his injuries, and to his pain;

    d. Failing to provide reasonable medical and/or first aid care;

  e. Failing to timely and properly treat and care for MOORS;

  f. Failing to timely and properly examine MOORS' injuries;

  g. Failing to take proper measures to secure proper treatment for MOORS, including unreasonably delaying taking measures to secure such proper treatment;

  h. Failing to properly bring and/or arrange for MOORS to be brought to an emergency room within a reasonable amount of time; and/or

  i. Failing to give MOORS proper discharge instructions; and/or

  j. Failing to give MOORS adequate pain medicine.

126. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

127. Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

128. CARNIVAL is therefore vicariously liable for all injuries and damages sustained by MOORS as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

129. At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

130. The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused MOORS great bodily harm in that, but for

CARNIVAL negligence, MOORS' injuries would not have occurred and/or said injuries would have been substantially lessened.

131.  CARNIVAL, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

132.  As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

133.  The losses are permanent and/or continuing in nature.

134.  MOORS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VIII**
**APPARENT AGENCY**
**FOR THE ACTS OF THE SHIP'S MEDICAL STAFF**

135. MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

136. At all times material hereto, the ship's medical staff represented to MOORS and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in that:

a. The medical staff wore a ship's uniform;

b. The medical staff ate with the ship's crew;

c. The medical staff was under the commands of the ship's officers;

d. The medical staff worked in the ship's medical department;

e. The medical staff was paid a salary by CARNIVAL;

f. The medical  staff worked aboard the vessel;

g. The medical staff spoke to MOORS as though they had authority to do so by CARNIVAL.

137. In addition, CARNIVAL further represented to MOORS that the vessel's medical staff were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as the "Carnival *Magic*' Medical Center/our infirmary/our medical center," and through encouraging MOORS to make use of "its" infirmary/medical center if MOORS was in need of medical attention.

138. Furthermore, at no time did CARNIVAL represent to MOORS in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents or employees of CARNIVAL.

139. At all material times, MOORS reasonably relied on the representations to MOORS'

detriment that the medical staff were employees, and/or agents, and/or servants of CARNIVAL.

140.  It was reasonable to believe that the medical staff were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

141.  This reasonable reliance was detrimental because it delayed MOORS from receiving proper medical treatment and/or MOORS would not have gone on the subject cruise with CARNIVAL had MOORS known that the medical staff on the ship were not CARNIVAL'S agents.

142.  CARNIVAL is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

143.  CARNIVAL had a duty to provide MOORS with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide MOORS with reasonable care under the circumstances.

144.  MOORS' injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents as follows:

   a.  Failing to promptly provide MOORS with proper medical and/or first aid care and attention;

   b.  Failing to timely and properly diagnose and/or assess MOORS' condition;

   c.  Failing to timely and properly attend to MOORS, to his injuries, and to his pain;

   d.  Failing to provide reasonable medical and/or first aid care;

   e.  Failing to timely and properly treat and care for MOORS;

   f.  Failing to timely and properly examine MOORS' injuries;

g.  Failing to take proper measures to secure proper treatment for MOORS, including unreasonably delaying taking measures to secure such proper treatment;

h.  Failing to properly bring and/or arrange for MOORS to be brought to an emergency room within a reasonable amount of time; and/or

i.  Failing to give MOORS proper discharge instructions; and/or

j.  Failing to give MOORS adequate pain medicine.

145.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

146.  As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

147.  The losses are either permanent or continuing in nature.

148.  MOORS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment,

lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IX**
**ASSUMPTION OF DUTY FOR THE**
**NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

149. MOORS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

150. CARNIVAL owed MOORS the duty to exercise reasonable care under the circumstances for the safety of its passengers.

151. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

152. CARNIVAL elected to discharge this duty by having MOORS seen by its own ship's physicians and/or other crew members.

153. As such, CARNIVAL voluntarily assumed a duty for the benefit of MOORS to use reasonable care in the provision of medical services to MOORS.

154. At all times material hereto, CARNIVAL was careless, negligent, and breached its duties due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents by:

   a.  Failing to promptly provide MOORS with proper medical and/or first aid care and attention;

   b.  Failing to timely and properly diagnose and/or assess MOORS' condition;

   c.  Failing to timely and properly attend to MOORS, to his injuries, and to his pain;

d.  Failing to provide reasonable medical and/or first aid care;

e.  Failing to timely and properly treat and care for MOORS;

f.  Failing to timely and properly examine MOORS' injuries;

g.  Failing to take proper measures to secure proper treatment for MOORS, including unreasonably delaying taking measures to secure such proper treatment;

h.  Failing to properly bring and/or arrange for MOORS to be brought to an emergency room within a reasonable amount of time; and/or

i.  Failing to give MOORS proper discharge instructions; and/or

j.  Failing to give MOORS adequate pain medicine.

155. At all times material hereto, the aforementioned acts or omissions on the part of CARNIVAL fell below the standard of care.

156.  CARNIVAL'S negligence proximately caused MOORS great bodily harm in that, but for CARNIVAL'S negligence, MOORS' injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

157.  CARNIVAL, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

158.  As a result of CARNIVAL'S negligence, MOORS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and lost earning capacity, and loss of the value of MOORS' vacation, cruise, and transportation costs.

159. The losses are permanent and/or continuing in nature.

160. MOORS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MOORS, demands Judgment against Defendant, CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE, for damages suffered and costs incurred, as well as for damages and costs that MOORS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MOORS' vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL MOORS, demands trial by jury on all issues so triable.

**Dated:** July 20, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Riana S. Maryanoff, Esq.**
Florida Bar No.: 1024768
rmaryanoff@aronfeld.com
**ARONFELD TRIAL LAWYERS**

One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***